REGAN, Judge.
Plaintiff, Nicholas H. Patterson, a patrolman employed by the New Orleans Police Department, instituted this suit against the defendant, Chester Ward, proprietor of the Ward Hotel, endeavoring to recover the sum of $11,500 for personal injuries incurred on June 11, Í948, at about 11:15 p.m. as a result of an assault and battery committed upon him by the defendant.
Defendant answered and admitted that an altercation occurred between plaintiff and himslf, but denied liability for any injury resulting therefrom on the ground that in cases of -mutual combat, where both parties to the fray have a share in causing the conflict, neither can successfully maintain an action against the other.
From a judgment in favor of plaintiff in the sum of $2,500, defendant prosecutes this appeal.
The record reveals that the plaintiff, at the time the assault and battery was com-' mitted upon him, was approximately forty-nine years of age, 5' 11" tall and weighed 170 pounds and that defendant was approximately thirty-nine years of age, 6' 4" tall and weighed 265 pounds. On the night of June 11, 1948, plaintiff was acting in the course of his employment as a police officer. His patrol encompassed both St. Charles and Camp Streets from Canal Street to Howard Avenue; at about 8 p. m. when he was in the vicinity of the Ward Hotel, located in 749 St. Charles Street, he observed a man and woman near or in the entrance thereof, “pulling at each other” and talking in a loud and boisterous manner; in order to attract their attention and to quell the disturbance, he tapped his night stick on the sidewalk and the couple hastily removed themselves and entered the hotel; shortly thereafter plaintiff followed; he asked the janitor if he had seen this couple enter and was informed that they were registered guests and had retired to their room; plaintiff before departing told the janitor that “they have to cut out that kind of cutting up downstairs because if I come back and catch them again, I will have to take action”; ' at approximately 10:55 p. m. 'plaintiff received a telephone call from defendant at the Sports Cafe, an inn which is located along his beat in St. Charles and Poydras Streets, requesting him to come to the Ward Hotel as defendant wanted to talk to him relative to plaintiff’s interest in the couple who entered the hotel at 8 p. m. Plaintiff arrived at the hotel and the janitor requested that he come upstairs to the office where defendant would see him. Plaintiff refused and informed the janitor if defendant wanted to talk to him he would have to come downstairs, whereupon defendant acquiesced and both he and plaintiff walked out to the sidewalk in front of the hotel, where they engaged in a heated discussion. Plaintiff testified that the defendant told him to leave both his hotel and guests alone and that if he persisted in his present actions, he would have him removed from this beat as he had removed other policemen heretofore. The course of the heated emotional discussion attracted several passersby to the scene and plaintiff stated that he turned to one of them and requested him to call a partol wagon as he intended to arrest defendant; as he was in the act of turning his head, defendant struck and knocked him to the sidewalk, causing him to strike his head thereon thus rendering him unconscious. Subsequently he was removed to the Charity *597 Hospital where he remained for eleven ■days, the first three of which he remained in a state of unconsciousness.
Defendant, in relating his version of the .altercation, testified that a heated argument did ensue between them and during the course thereof, plaintiff turned to a bystander and requested that he hold his badge and gun as he intended to engage in fisticuffs with the defendant; thereafter plaintiff swung at him and missed, whereupon he knocked plaintiff to the sidewalk where he remained in a prone position and unconscious. Defendant, aware that plaintiff was seriously injured, hastily left the scene of the conflict in his automobile and drove directly to his home. Subsequently, police officers visited his residence but were unable to gain entrance therein to either arrest or to interview the defendant. Defendant cautiously ascertained that the police had departed from his neighborhood and then drove to Baton Rouge, where he remained for several days and until a charge was filed against him in the Criminal District Court for the Parish of Orleans, whereupon he returned, made bond .and was released into the custody of his bondsman.
The only question posed for our •consideration by virtue of the foregoing revelation is one of fact and that is whether defendant committed an unprovoked assault and battery upon plaintiff.
The trial judge was of the opinion that •the assault and battery committed upon plaintiff was “without provocation, was deliberate, malicious, wilful and wanton” and •our review of the record reflects that it contains an abundance of proof showing ■that the trial judge’s factual and legal ■conclusions were justified.
Defendant, on appeal, insists that •the trial court committed error in permitting, over his objection, the introduction •of the testimony of John B. Donahue into the record, which had previously been ad■duced during a trial in the Criminal Court for the Parish of Orleans, especially since Donahue was within the jurisdiction of the court and his testimony was easily available during the course of the trial. The record reveals that' Donahue hád been subpoenaed by the plaintiff well in advance of the trial and that during the course thereof an attorney appeared on his behalf and presented a medical certificate to the court ambigiously indicating that Donahue was ill and confined to his home. The trial judge was dubious and, therefore, issued an attachment for him. The sheriff, in pursuance thereof, proceeded to his home in 810 Julia Street, and, as anticipated, Donahue was not to be found. He then visited a barroom, but upon arrival learned that someone had surreptitiously telephoned Donahue to depart therefrom in haste, which- was about fifteen minutes before he arrived. The trial judge, because of an accumulation of these incidents, which formulated a positive picture of an attempt to defeat the ends of justice, was absolutely convinced that Donahue, at the instigation of the defendant, was deliberately concealing himself from the court and was, therefore, of the opinion that unless Donahue was produced forthwith, he would permit the testimony adduced during the course of the trial in the Criminal Court to be introduced in evidence in the present case. This finally occurred due to Donahue’s successful effort in concealing himself as a witness. Incidentally Donahue was subsequently sentenced to the Parish Prison for manifesting his contempt for the court. Under these circumstances, we are of the opinion that the trial judge very properly permitted the introduction of this testimony into the record. However, assuming arguendo, a position most favorable to the defendant, if we exclude the testimony of Donahue from our consideration in evaluating the evidence, we are still of the unequivocal opinion that the record contains an abundance of other positive proof showing that the assault and battery committed upon plaintiff by defendant was deliberate and unprovoked.
The trial court rendered a judgment for injuries incurred by plaintiff as the result of the blow administered to him by the defendant in the amount of $2,500. We find that this award is more than adequately supported by the medical testimony *598 contained in the record. Plaintiff was rendered unconscious by the blow which he received at the hands of the defendant and was confined to the Charity Hospital for approximately eleven days. Upon admission into the accident room of the Charity Hospital a spinal tap was performed and it was “grossly bloody”; an x-ray of the skull was suggestive of fracture; upon his return to consciousness plaintiff complained of headaches and pains in the back of his neck and nausea and there was a bleeding from his left ear. The medical testimony further reveals that plaintiff was acutely ill. The final diagnosis upon discharge was “concussion * * * and basal fractured skull”. As a result of the injuries plaintiff sustained a left facial paralysis with his mouth pulling to the right with definite signs of facial nerve weakness. This facial lag persisted, at least, up to the time of the trial in the court, a qua.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.